UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

EVA VERNER-BUCHOWSKI,

      Petitioner,

v.                                                                    CASE NO. 6:13-cv-1244-Orl-37KRS

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

      Respondents.

_____/

**ORDER**

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. § 2254 (Doc. 1).   Respondents filed a response to the petition in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases for the United States District Courts* (Doc. 12).   Petitioner filed a reply to the response (Doc. 19), a supplement (Doc. 21), and an addendum to the petition (Doc. 25).

Petitioner alleges fourteen claims for relief in her habeas petition. [1]    For the following reasons, the petition for writ of habeas corpus is denied.

**I.      PROCEDURAL HISTORY**

---

[1] Petitioner lists eight grounds in her habeas petition.   However, several of these grounds contain multiple subclaims.   The petition is disjointed; commingles and repeats allegations and claimed constitutional violations.   The Court has done its best to construe the petition liberally and to address the claims and subclaims in an orderly way. Thus, for ease of discussion, the Court has renumbered the claims and addresses each separately except in instances where the claims are related.

Petitioner was charged by the Office of Statewide Prosecution with two counts of criminal use of personal identification information in an amount greater than $100,000 (App. A).[2] After a jury trial (App. S), Petitioner was convicted as charged (App. T). The trial court sentenced Petitioner to two consecutive fifteen-year terms of imprisonment, each with a ten-year minimum mandatory term (App. Z & AA). Petitioner filed a *pro se* petition for writ of habeas corpus with the Florida Fifth District Court of Appeal ("Fifth DCA"), and the appellate court dismissed the petition (App. BB & CC).

Petitioner subsequently appealed her convictions and sentences (App. DD). After granting Petitioner leave to proceed *pro se* on appeal (App. GG), the Fifth DCA affirmed *per curiam* (App. KK). Petitioner filed a petition for review with the Supreme Court of Florida (App. PP). The Supreme Court of Florida declined to accept jurisdiction and denied the petition (App. RR).

Petitioner filed a motion for return of seized property in the trial court (App. SS). The trial court summarily denied the motion (App. TT). Petitioner also filed a motion to enforce and a petition for writ of mandamus in which she asked the trial court to enforce its prior order directing that her property be returned (App. UU and VV). The trial court denied the motions (App. XX). Petitioner appealed (App. ZZ), and the Fifth DCA affirmed *per curiam* (App. EEE).

---

[2] The State alleged that Petitioner used the identification of Se'Belle Smith Dymmek ("Dymmek") without her permission in order to obtain two mortgages using Dymmek's property as collateral for the mortgages (App. A & B). One mortgage was for $350,000 and the other was for $2,300,000. *Id.*

Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (App. JJJ). After Petitioner filed two addendums (App. KKK & WWW) and an amended Rule 3.850 motion (App. SSS), the trial court summarily denied the motions (App. XXX). Petitioner appealed (App. YYY), and the Fifth DCA affirmed *per curiam* (App. AAAA).

## II.   LEGAL STANDARDS

### A.   Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh

3

Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts.   Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."   *Id.* Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court.   *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B.     Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984),

established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[3]    *Id*. at 687-88.    A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.    *Id*. at 689-90.    "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."    *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight.    *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).    Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail

---

[3] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

Likewise, it well established that a defendant has the right to effective counsel on appeal. *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984). Claims of ineffective assistance of appellate counsel are governed by the same standard applied to trial counsel under *Strickland*. *See Sairras v. Fla. Dep't of Corr.*, 496 F. App'x 28, 34 (11th Cir. 2012) (citing *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991)). When evaluating the prejudice prong of *Strickland*, the Court must first review the merits of the omitted claim to determine whether counsel's actions affected the outcome of the appeal. *See Heath*, 941 F.2d at 1132. Counsel's performance will be deemed prejudicial if the Court concludes that "the neglected claim would have a reasonable probability of success on appeal." *Id*.

### III.   ANALYSIS

#### A.   Claim One

Petitioner alleges she was denied due process when she was forced to proceed *pro se* at trial against her will (Doc. 1 at 19). In support of this claim, Petitioner contends that she requested effective counsel and did not wish to represent herself. *Id.* Petitioner states that because she was forced to proceed *pro se*, she was unable to gather evidence and depose the State's witnesses. *Id.* Petitioner raised this claim on direct appeal (App. HH). The Fifth DCA affirmed *per curiam* (App. KK).

Prior to trial, Petitioner filed several motions to discharge counsel (App. C at 106-

6

07; App. D).   The trial court held a hearing on Petitioner's motions (App. F).   Petitioner told the trial court that the Office of the Public Defender did not have "time or money" to represent her.   *Id.* at 6-7.   Petitioner also stated that she would prefer to represent herself.   *Id.* at 6.   The trial court advised Petitioner regarding her right to an attorney and the ways in which an attorney could help her.   *Id.* at 8-11.   The trial court also advised her regarding the limitations of representing herself.   *Id.* at 11.   Petitioner stated that she understood these matters.   *Id.* at 8-12.   The trial court further inquired into Petitioner's health and education.   *Id.* at 12-13.   The trial court found Petitioner was competent to waive counsel and allowed Petitioner to discharge defense counsel.   *Id.* at 14.

The trial court later reappointed the Office of the Public Defender to represent Petitioner (App. J).   Petitioner again moved to discharge counsel (App. K).   The trial court held a hearing on Petitioner's motion, at which time defense counsel Marsha D. Frankel ("Frankel") advised the court that she had met with Petitioner on a number of occasions (App. L at 2).   After a lengthy discussion, Petitioner agree to forego discharging counsel at that time.   *Id.* at 15-16.   However, several weeks later Petitioner filed additional motions to discharge counsel (App. O).   The trial court held another hearing, during which it again advised Petitioner of the charges, her rights regarding counsel, and the hazards of representing herself (App. P at 20-24).   The trial court indicated that it would appoint Frankel as standby counsel.   *Id.* at 24.

The record reflects that Petitioner was not forced to proceed *pro se* in her criminal

case.   Petitioner asked to discharge counsel on two occasions, and after an inquiry, the

trial court granted her requests.   Although Petitioner stated that her physical health was

poor, the record demonstrates that Petitioner was intelligent, mentally aware, understood

the nature of the charges, the defenses, and penalties, was advised regarding the rules of

procedure and evidence, was appointed standby counsel, and was cautioned about the

pitfalls of representing herself.   The record indicates that Petitioner made a knowing and

intelligent waiver of her right to counsel.   *Faretta v. California*, 422 U.S. 806 (1975)

(holding that the Sixth Amendment includes an implicit right to self-representation, and

a defendant may knowingly and intelligently waive the right to counsel after the trial

court conducts a hearing during which the defendant is informed of the charges, the trial

procedures, and the hazards of self-representation); *Rose v. United States*, 590 F. App'x

937, 940 (11th Cir. 2014).   Petitioner has not shown that she was denied due process, and

therefore, this claim is denied.

To the extent Petitioner argues that the trial court should have discharged Frankel

and appointed a new attorney, Petitioner has not demonstrated that she is entitled to

relief on this claim.   In the State of Florida, when a criminal defendant requests

discharge of court-appointed counsel, the court is required to hold a hearing to determine

whether there is cause to believe that trial counsel is not rendering effective assistance.

*See Nelson v. State*, 274 So. 2d 256 (Fla. 4th DCA 1973).   The trial court's alleged failure to

hold an adequate *Nelson* hearing or find that Frankel was acting in a deficient manner is

not subject to federal review.   *See McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir.

8

1992); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (holding that "[i]t is a fundamental principle that state courts are the final arbiters of state law, federal habeas courts should not second-guess them").   It is not the function of this Court to scrutinize the application of Florida law by the Florida court..

Moreover, to the extent Petitioner complains that she was forced to proceed to trial unprepared without evidence and witnesses, the Court finds that this allegation is refuted by the record.   The prosecutor indicated that he would attempt to find and subpoena any witness Petitioner wished to call at trial (App. P at 75).   Petitioner initially could not give the trial court or prosecutor the names of any witnesses she wished to call. *Id.* at 77-79.   Petitioner requested that she be allowed to call three witnesses: Joe, Heidi, and Brian.   *Id.* at 80.   Petitioner did not know the last names of the witnesses.   *Id.*   The prosecutor agreed to subpoena these witness if Petitioner could tell him how to locate the witnesses.   *Id.* at 101.   Frankel indicated that Petitioner had never asked her to investigate these witnesses.   *Id.* at 109.   Petitioner also indicated that she wished to call a doctor from the Sand Lake Hospital to testify on her behalf, but after the prosecutor stated that he would try to find this witness, Petitioner declined the prosecution's assistance.   *Id.* at 122-24.   Prior to the commencement of trial, the State gave Petitioner access to all of the documents that it had seized from her hotel room, which were contained in a red suitcase (App. R at 2).

The record reflects that Petitioner was given the opportunity to call witnesses and review documents prior to the commencement of trial.   However, Petitioner declined to

pursue these opportunities . Therefore, Petitioner is not entitled to relief on this claim. Therefore, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, claim one is denied.[4]

### B.    Claim Two

Petitioner claims that trial counsel was ineffective for failing to advise her regarding the five-year plea offer (Doc. 1 at 20). Petitioner raised this claim in her addendum to the Rule 3.850 motion (App. KKK). The trial court summarily denied the claim, finding counsel was not deficient for failing to advise Petitioner regarding the plea because Petitioner was proceeding *pro se* when the State made the offer (App. XXX). The Fifth DCA affirmed *per curiam* (App. AAAA).

At an August 23, 2005, hearing on Petitioner's motion to discharge counsel, Frankel told the court that she advised Petitioner regarding the five-year plea offer, and Petitioner stated she did not want to accept a plea (App. L at 3). The Court asked

---

[4] Additionally, Petitioner argues for the first time in her reply that due to her *pro se* status, she was unaware of how to pick a jury (Doc. 19 at 4). Petitioner states that she would have picked different jurors than those who sat on her jury. *Id.* However, the record reflects that Frankel helped Petitioner with jury selection (App. S at 33). The trial court gave Petitioner an opportunity to consult with Frankel prior to questioning the prospective jury members. *Id.* at 95. The trial court also allowed Petitioner additional time to discuss with counsel which potential jury members she wanted for the venire. *Id.* at 99-100, 106-07. Petitioner was allowed to exercise her peremptory challenges in the manner she saw fit. *Id.* at 101-109. Petitioner did not have any objections to the members who were empaneled. Petitioner has not shown that she was unprepared for voir dire or unable to properly pick a jury. Therefore, this claim is denied.

Petitioner whether she ever indicated that she wanted to accept the five-year offer.   *Id.* at 11.   Petitioner stated that Frankel did not discuss the matter with her. *Id.* at 11. Frankel stated, "She has never said that she wanted to accept this offer.   And I've seen her at least three times when she could have said, yes, I want it, or with some modification.   I had even advised her at the time that the Prosecutor had indicated that there might be some monies that could be returned to Ms. Verner.   She was not interested."   *Id.* at 12.   The prosecutor also advised the court that Petitioner said she was not interested in taking a plea because "any kind of term of imprisonment longer than a year was a death sentence."   *Id.* at 12.   The trial court noted that Petitioner had made the same statement to the court.   *Id.*

Additionally, at a September 26, 2005 hearing, Frankel stated that the five-year plea offer was initially conveyed to Petitioner when she was proceeding *pro se* (App. P at 14).   Frankel also indicated that the State had left the five-year plea open "for a period of time." *Id.*   When Frankel was reappointed to represent Petitioner, she discussed the plea with Petitioner, and Petitioner indicated she "was not interested in that plea offer." *Id.* at 15.   The prosecutor agreed that Petitioner was proceeding *pro se* when the five-year plea was initially conveyed to her.   *Id.* at 37.   The prosecutor further stated that she had letters from Petitioner indicating that any sentence would be "a death sentence." *Id.* at 38. The prosecutor then offered a plea to the ten-year minimum mandatory term.   *Id.* Petitioner refused to accept the plea, stating that due to her health a ten-year plea would amount to a death sentence.   *Id.* at 54-55.

Petitioner was advised of the five-year plea offer when she represented herself. Because counsel had been discharged, she had no duty to advise Petitioner regarding the matter.   Furthermore, even if counsel had a duty to advise Petitioner after she was reappointed, the record reflects that Petitioner was advised regarding the plea offer. Moreover, the record indicates that Petitioner was not willing to accept a term of incarceration for more than one year.   Thus, Petitioner has not demonstrated either deficient performance or prejudice.   The state court's denial of this claim was neither contrary to, nor an unreasonable application of, *Strickland*.   Accordingly, claim two is denied.

### C.      Claim Three

Petitioner contends that her Fifth Amendment rights were violated when the State failed to formally charge her or present the charges to her (Doc. 1 at 21).   In support of this claim, Petitioner contends that one cannot be tried and convicted unless "indicted." *Id.*   Petitioner raised this claim in her Rule 3.850 motion (App. JJJ).   The trial court summarily denied the claim, concluding that Petitioner's charge via information was proper pursuant to Florida law (App. XXX).   The Fifth DCA affirmed *per curiam* (App. AAAA).

Petitioner was charged by information with two counts of section 817.568(2)(c), Florida Statutes (App. A).   Rule 3.140 of the Florida Rules of Criminal Procedure provides that "[a]n offense that may be punished by death shall be prosecuted by indictment."   Fla. R. Crim. P. 3.140(a).   The Rule further states that all other offenses

may be prosecuted by indictment <u>or</u> information.   *Id.*   Thus, because Petitioner was not facing a crime punishable by death, the State was not required to indict Petitioner.   The record reflects that Petitioner was properly charged by information.   Accordingly, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.   Claim three is therefore denied.

### D.     Claims Four and Six

Petitioner asserts in her third and fifth claims that her due process rights were violated when her property was seized by the Sheriff and not returned (Doc. 1 at 22-23, 29-31; Doc. 25).   Petitioner contends that the trial court ordered the return of her property but the Sheriff failed to comply with that order (Doc. 1 at 29-31).   Petitioner essentially challenges the forfeiture of her assets.   *Id.*   Petitioner raised these claims in her Rule 3.850 motion and amended Rule 3.850 motion (App. JJJ & SSS).   The trial court summarily denied these claims, concluding that they were not properly raised in a Rule 3.850 motion (App. XXX).   The Fifth DCA affirmed *per curiam* (App. AAAA).

A challenge to the seizure and forfeiture of assets is not cognizable in a habeas proceedings.   *See Adams v. Bunting*, 2015 WL 4898129, at * (N.D. Ohio Aug 17, 2015); *Marin v. Raperlje*, 2014 WL 5023466, at *1 (E.D. Mich. Oct. 8, 2014); *Melton v. Crosby*, 2005 WL 3434051, at *10 (M.D. Fla. Dec. 13, 2005); *Bowen v. United States*, No. Civ.A.7:05-cv-37(CDL), 2005 WL 1676668, at *2 (M.D. Ga. June 29, 2005).   Therefore, Petitioner is not entitled to relief on claims four and six, and they are denied.

### E.     Claim Five

Petitioner contends that trial counsel was ineffective because she had no plans for her defense, failed to speak to witnesses and gather evidence, failed to subpoena Joe Fricano ("Fricano"), and failed to file a motion to suppress the seizure of her property, specifically, the documents and computer taken from her hotel room (Doc. 1 at 23-25, 29). Petitioner also alleges that she is not guilty of the crimes because she had no intent to commit the crimes and there were no injuries to the victim.  *Id.* at 23-24).   Petitioner raised this claim in her Rule 3.850 motion (App. JJJ).   The trial court summarily denied the claim, noting that because Petitioner represented herself, she could not make an argument that counsel rendered deficient performance (App. XXX).   The Fifth DCA affirmed *per curiam* (App. AAAA).

Petitioner has not shown that she is entitled to relief.   First, Petitioner cannot demonstrate that Frankel had "no plans" for her defense.   Frankel indicated in a letter to Petitioner that she had "no documents showing plans for . . . [a] defense." (App. SSS). That statement, however, cannot be construed to mean that counsel had not prepared any defense on Petitioner's behalf.   Moreover, the Court notes that Petitioner elected to proceed *pro se*.   Therefore, counsel cannot be faulted for failing to present a defense at trial.

Additionally, Petitioner states that prior to trial, counsel failed to speak to witnesses and gather evidence.   Petitioner claims counsel failed to call her cardiologist

to testify at trial.[5]   The cardiologist purportedly would have testified that Petitioner signed the documents for the second mortgage while in the hospital, and she did not understand what she was doing due to her health concerns.   As discuss in relation to claim one, Frankel indicated that Petitioner never gave her the name of the doctor. When the State offered to find and subpoena the doctor, Petitioner refused (App. P at 101, 122-24).   Therefore, Petitioner cannot show that defense counsel's actions amount to deficient performance.   Furthermore, Herbert Biggs testified that when Petitioner signed the documents for the second mortgage, she appeared to be alert, lucid, and "sharp." (App. S at 267-72).   Consequently, Petitioner cannot demonstrate prejudice.

Petitioner states in her reply that counsel failed to call Robert Cohen ("Cohen") as a witness.[6]   Petitioner contends that Cohen would have testified that Petitioner was attempting to give all the money she obtained from the mortgages back to the lenders.[7]

---

[5]   Petitioner does not provide an affidavit from the cardiologist demonstrating that he or she would have testified in this manner. "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit.   A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted); *Dottin v. Sec'y Dep't of Corr.*, No. 8:07-cv-884-T-27MAP, 2010 WL 376639, at *6 (M.D. Fla. Sept. 16, 2010). Therefore, Petitioner's claim is speculative, and her self-serving speculation will not sustain this claim of ineffective assistance of counsel.   *See Tejeda v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating vague, conclusory, speculative, and unsupported claims cannot support relief for ineffective assistance of counsel).

[6]   This argument is not raised in the petition.

[7]   There is no affidavit from Robert Cohen establishing his testimony.

Even assuming that Cohen would have testified in this manner, Petitioner cannot demonstrate prejudice. The crime was committed when Petitioner used the victim's personal information to obtain the mortgages. Disposition of the fruits of the crime has no relevance to its commission.

With regard to the failure to subpoena witness Fricano, Petitioner stated that counsel should have subpoenaed this witness in order to question him regarding Norma Harper ("Harper"), whom Petitioner claims secured the $350,000 mortgage (Doc. 1 at 24). Fricano testified at trial. Petitioner had every opportunity to question Fricano regarding this matter and in fact cross-examined him (App. S at 166-67). Moreover, Fricano testified that he received a phone call from a person claiming to be the victim (App. S at 156-57). This person secured a mortgage for $350,000 after faxing him a copy of her driver's license and passport. *Id.* at 157. The person with whom Fricano had contact was later identified as Petitioner. *Id.* at 160-62. The failure to question Fricano regarding Harper's purported involvement can hardly be attributable to standby counsel and, in any event, did not result in prejudice.

Petitioner also asserts that counsel failed to file a motion to suppress the seizure of her documents and computer (Doc. 1 at 23-25, 29). Petitioner states that the police did not have a warrant to seize her property. *Id.* at 25. She is wrong. Reginald Roberts, a deputy sheriff with the Orange County Sheriff's Office, testified that he obtained a warrant to search and seize documents in connection with the crimes and that Petitioner gave her consent (App. S at 242). Therefore, counsel had no basis to move to suppress the

16

search and seizure.    Petitioner has not demonstrated that counsel acted deficiently in this regard or that prejudice resulted.

Finally, to the extent Petitioner also alleges in this ground she could not have been convicted of section 817.568(2)(c), Florida Statutes,[8]  because she had no intent to commit the crimes and there was no monetary injury to the victim, her claim is without merit. Petitioner admitted to police and a private investigator that she used the victim's identification without permission to obtain the two mortgages each totaling more than $100,000 (App. S at 229, 247-50).    Therefore, Petitioner cannot establish that she should not have been convicted of the crimes.    The state court's denial of this claim is neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, this claim is denied.

### F.    Claim Seven

Petitioner alleges that trial counsel was ineffective for failing to present mitigating circumstances at sentencing (Doc. 1 at 27-28).    In support of this claim, Petitioner contends that counsel failed to call her cardiologist and an attorney from Miami.    *Id.* Petitioner states that her health, age, and confusion were mitigating factors.    *Id.* Petitioner raised this claim in her Rule 3.850 motion (App. JJJ).    The trial court summarily denied relief, noting that Petitioner represented herself in these proceedings (App. XXX).    The Fifth DCA affirmed *per curiam* (App. AAAA).

---

[8]  Section 817.568(2)(c) provides for a ten-year minimum mandatory sentence if the pecuniary benefit of the fraud is $100,000 or more.

As noted above, Petitioner exercised her right to represent herself.   Federal courts have held that after a defendant elects to proceed *pro se* pursuant to *Faretta*, there is no constitutional right to "standby counsel." *See McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984); *Burrow v. Sec'y, Dep't of Corr.*, No. 2:11-cv-60-FtM-29UAM, 2014 WL 1092452, at *15 (M.D. Fla. Mar. 19, 2014).   Therefore, Petitioner cannot show deficient performance or prejudice arising from standby counsel's representation.   *See Wilson v. Parker*, 515 F.3d 682, 696-97 (6th Cir. 2008) (stating that the to the extent standby counsel failed to "act during trial, [Petitioner] merely suffered the consequences of his decision to proceed pro se" and "[l]ogically, a defendant cannot waive his right to counsel and then complain about the quality of his own defense.").

As noted in relation to claim one, the State indicated that it would try to find Petitioner's doctor from the Sand Lake Hospital and subpoena him or her for trial. Petitioner indicated that she did not want the prosecutor's help in the matter (App. P at 101, 122-24).   Furthermore, Petitioner testified that she was in poor health when the crimes were committed, had several heart attacks, and experienced confusion regarding the events (App. S at 354).   Therefore, trial court was aware of these "mitigating" circumstances.   However, several of the State's witnesses testified that Petitioner appeared alert, intelligent, and aware of what she was doing when she signed the documents to procure the mortgages (App. S at 163-64, 183-84, 271-72).   Consequently, there is no indication that the failure to present additional evidence resulted in prejudice.

The state court's denial of this claim was neither contrary to, nor an unreasonable

application of, clearly established federal law.    Accordingly, this claim is denied.

### G.    Claim Eight

Petitioner asserts that she should have been charged in federal court (Doc. 1 at 32). Petitioner maintains that the state court did not have jurisdiction over her crimes.    *Id.* Petitioner premises her claim on the fact that the money received from the mortgages was transferred to a bank in the Grand Cayman Islands (Doc. 1 at 32).    Petitioner contends that the State of Florida had no jurisdiction over a bank in the Grand Cayman Islands. *Id.*

Petitioner raised this claim in her Rule 3.850 motion (App. JJJ).    The state court summarily denied the claim, concluding that Petitioner was properly charged in the state court (App. XXX).    The Fifth DCA affirmed *per curiam* (App. AAAA).

Petitioner is not entitled to relief.    The crimes, willfully using the victim's personal identification without consent, were committed in the State of Florida. Furthermore, the crimes were committed in or affected two or more judicial circuits because the events occurred in Orange, Alachua, Miami-Dade, Broward, and Collier Counties (App. A).    Therefore, the Office of the Statewide Prosecutor, acting on behalf of the State of Florida, had jurisdiction to charge Petitioner with the offenses.    *See Thomas v. State*, 125 So. 3d 874, 875 (Fla. 4th DCA 2013); § 16.56(1)(a), Fla. Stat. (2004). Accordingly, this claim is denied.

### H.    Claim Nine

Petitioner alleges that the trial court improperly sentenced her without

considering a presentence investigation report (Doc. 1 at 33).    Petitioner raised this claim in her Rule 3.850 motion (App. JJJ). The trial court summarily denied the motion finding that a presentence investigation report was a matter of judicial discretion pursuant to Florida law (App. XXX).    The Fifth DCA affirmed *per curiam* (App. AAAA).

The instant claim does not implicate federal constitutional law, and thus, is not subject to federal habeas review.    The state court's determination that the failure to prepare a presentence investigation report did not violate Florida law is a state law issue. *See McCullough*, 967 F.2d at 535 (noting that a state's interpretation of its own laws or rules provides no basis for federal habeas relief because no question of a constitutional nature is involved); *Callahan*, 427 F.3d at 932.    Federal courts "must defer to a state court's interpretation of its own rules of evidence and procedure." *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985) (citing *Spencer v. Texas*, 385 U.S. 648 (1967)).

Alternatively, Petitioner has not demonstrated that she is entitled to relief on this claim.    Rule 3.710(a) of the Florida Rules of Criminal Procedure provides that a trial court "may refer the case to the Department of Corrections for investigation and recommendation" unless a defendant is under the age of eighteen or has been found guilty of a first felony offense.    At the time of sentencing, Petitioner was over the age of eighteen and had a prior felony conviction.    Consequently, the trial court had discretion regarding the matter. *See Wyatt v. State*, 714 So. 2d 663 (Fla. 5th DCA 1998).    The state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.    Therefore, it is denied.

20

### I.     Claim Ten

Petitioner contends that Assistant State Attorney McMillen committed prosecutorial misconduct when she attended several hearings and the sentencing proceeding in this case despite the fact that she had been recused for bias (Doc. 1 at 34). Petitioner raised this claim in her Rule 3.850 motion (App. JJJ).   The trial court summarily denied the claim, concluding that no prosecutorial misconduct occurred because McMillen did not recuse herself from the case but instead could not prosecute Petitioner's trial because she was required to try another case during the same trial period (App. XXX).   The Fifth DCA affirmed *per curiam* (App. AAAA).

Petitioner's claim is refuted by the record.   At a pre-trial hearing the day before trial commenced, McMillen notified the trial court that she was currently conducting a trial in another case (App. P at 4-5, 19).   Assistant State Attorneys Bogle, Collins and Graham prosecuted the action in McMillen's absence (App. S).   Bogle and Collins attended the sentencing hearing on behalf of the State (App. AA).   There is no indication that McMillen recused herself or that there was any basis for recusal.   The state court's denial of this claim is neither contrary to, nor an unreasonable application of, clearly established federal law.   Accordingly, this claim is denied.

### J.     Claim Eleven

Petitioner claims that her civil rights have been violated by the Warden of Lowell Correctional Institution (Doc. 1 at 35).   In support of this claim, Petitioner asserts that the Warden refuses to sell "regular ball-point pens" at the canteens and has replaced

these pens with "security pens" that "last only for about six pages and wreck our hands. . . ." *Id.*   Petitioner also states that this a "new ground." *Id.*

Respondents contend that this claim is not cognizable in the instant habeas action (Doc. 12 at 50).   The Court agrees.   Petitioner's challenge to the conditions of her confinement should be made in a civil rights complaint.   Section 1983 is the "proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life . . . ." *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973); *see also Tavorn v. Sloane*, No. 5:12-cv-253-MP-GRJ, 2012 WL 5364230, at *1 (N.D. Fla. Oct. 1, 2012) (addressing a claim that prison officials denied the prisoner numerous personal items, including writing implements, in a civil rights complaint filed pursuant to 42 U.S.C. § 1983). Accordingly, this claim is denied.

### K.   Claim Twelve

Petitioner argues in her reply that the court reporter submitted a perjured affidavit claiming that no record of a pre-trial hearing existed and then later, when the tape of the hearing was found, tampered with the transcript of the hearing (Doc. 19 at 5-6). Petitioner attributes the court reporter's perjury to the Assistant State Attorney.   *Id.* at 6. Petitioner raised this claim in her Rule 3.850 motion (App. JJJ).   The trial court summarily denied the claim as speculative (App. XXX).   The Fifth DCA affirmed *per curiam* (App. AAAA).

Petitioner, who represented herself on direct appeal, attempted to have the entire record transcribed for the appellate court.   Initially, the court reporter attested that no

tape from the September 26, 2005 hearing was contained in the criminal record (App. HH, Exs. 15, 19).   Eventually, the court reporter located the tape of the September 26, 2005 hearing, and the hearing was transcribed for appeal (App. P).

Petitioner's claim that the court reporter committed perjury is without merit. Although the court reporter could not initially locate the tape of the September 26, 2005 hearing, after it was located, the hearing was transcribed.   Additionally, to the extent Petitioner claims that the transcript was tampered with, the Court concludes that Petitioner's allegation is speculative.   *See Tejeda*, 941 F.2d at 1559.   The state court's denial of this claim is not contrary to, or an unreasonable application of, clearly established federal law.   Accordingly, claim twelve is denied.

### K.   Claims Thirteen and Fourteen

Petitioner alleges that her Eight Amendment rights were violated when the trial court refuse to lower her bond (Doc. 1 at 21).   Petitioner also asserts that her thirty-year sentence amounts to cruel and unusual punishment.   *Id.*

Petitioner did not raise these claims in the state court, therefore they are unexhausted.   However, Respondents did not address these claims in their response (Doc. 12).   Thus, it appears that Respondents have waived the exhaustion requirement with respect to the claims.   *McNair v. Campbell*, 416 F. 3d 1291, 1304-05 (11th Cir. 2005). To the extent that the Court may *sua sponte* invoke exhaustion, the Court declines to do so.   *See Esslinger v. Davis*, 44 F.3d 1515, 1524 (11th Cir. 1995) (a "district court may invoke the [exhaustion] bar *sua sponte* [only] where . . . requiring the petitioner to return to state

court to exhaust his claims serves an important federal interest").

Petitioner has not demonstrated that she is entitled to relief on her claims. Petitioner's claim related to her bond is not properly raised in the instant § 2254 habeas petition because it does not challenge her underlying judgment of conviction.   *See Biggs v. McNeil,* No. 08-60428-CIV, 2008 WL 5054342, at *4 n. 5 (S.D. Fla. Nov. 26, 2008) (stating "[r]elief pursuant to Section 2254 . . . applies only to post-trial situations and affords relief to a petitioner in custody pursuant to the judgment of a state court"); *Love v. Ficano*, 19 F. Supp. 2d 754, 755-56 (E.D. Mich. 1998) (challenges to bond are properly filed in a section 2241 petition prior to trial).   A habeas petitioner must demonstrate that any error in setting bond resulted in an unconstitutional conviction.   *See Qawi v. Vasquez*, 995 F.2d 232 (9th Cir. 1993).   Petitioner has not met that burden.[9]

Furthermore, Petitioner's sentence falls within the statutory limits, therefore it does not violate the Eighth Amendment.   *See United States v. Brandt*, 585 F. App'x 754,

---

[9]Alternatively, Petitioner cannot demonstrate that her bond violated the Eighth Amendment.   "The basic test for excessive bail is whether the amount is higher than reasonably necessary to assure the accused's presence at trial." *United States v. James*, 674 F.2d 886, 891 (11th Cir. 1982).   Petitioner merely states, in a conclusory manner, that her $1,000,000 bond violates the Eighth Amendment.   *See Harris v. Gee*, No. 8:12-cv-790-T-30AEP, 2012 WL 3156589, at *2 (M.D. Fla. Aug. 3, 2012) (citing *White v. Wilson*, 399 F.2d 596, 598 (9th Cir. 1968)).   Petitioner fraudulently obtained two mortgages worth more than $2,000,000.   Petitioner also had previously been convicted of a similar crime in the State of California.   Additionally, Petitioner had overseas bank accounts, the means to flee the jurisdiction, and had used aliases.   The trial court's bond ensured Petitioner's presence at trial.   Accordingly, this claim is denied.

758 (11th Cir. 2014) (stating that when reviewing Eighth Amendment challenges to a sentence, a defendant must make a threshold showing that his or her sentence is grossly disproportionate; however, where a sentence falls within the limits imposed by statute, one cannot make such a showing) (citing *United States v. Johnson*, 451 F.3d 1239, 1243 (11th Cir. 2006)).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

### IV.   CERTIFICATE OF APPEALABILITY

This Court should grant an application for certificate of appealability only if the Petitioner "makes a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2).   To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009).   When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a Petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934.     However, a prisoner need not show that the appeal will succeed.   *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

The Court concludes that Petitioner has not made the requisite showing in these circumstances.    Petitioner is not entitled to a certificate of appealability.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.      The Petition for Writ of Habeas Corpus filed by Eva Verner-Buchowski (Doc. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.    The Clerk of the Court shall enter judgment accordingly.

2.      Petitioner is **DENIED** a certificate of appealability.

3.      The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** in Orlando, Florida, this 1st day of September, 2015.

ROY B. DALTON JR.
United States District Judge

Copies to:
OrlP-3 9/1
Eva Verner-Buchowski
Counsel of Record

26